# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 06/10/2024 09:48 AM                INDEX NO. 652953/2024
NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 06/12/2024

Case 1:24-cv-05864   Document 1-1   Filed 08/01/24   Page 2 of 18

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ANN K. CHUNG,

                Plaintiff,

     v.

J.H. WHITNEY CAPITAL PARTNERS, LLC,

                Defendant.

**Index No. _____**

**Complaint**

**SUMMONS**

---

TO THE ABOVE-NAMED DEFENDANT:

    You are hereby summoned to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

    The bases for designating New York County as the venue are that pursuant to CPLR Section 503(a) one or more of the parties reside in New York County, and Plaintiff designates New York County as the place of trial for this action.

Dated: New York, New York
          June 7, 2024

                                  By:   /s/ *Joshua M. Slocum*_____

                                  David H. Wollmuth
                                  Joshua M. Slocum
                                  Roselind F. Hallinan
                                  WOLLMUTH MAHER & DEUTSCH LLP
                                  500 Fifth Avenue
                                  New York, New York 10110

Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
rhallinan@wmd-law.com

*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ANN K. CHUNG,

                Plaintiff,

     v.

J.H. WHITNEY CAPITAL PARTNERS, LLC,

                Defendant.

**Index No.** _____
**Complaint**

Ann K. Chung ("Ms. Chung" or "Plaintiff") brings this Complaint by and through her attorneys, Wollmuth Maher & Deutsch LLP, against Defendant J.H. Whitney Capital Partners, LLC ("J.H. Whitney" or "Defendant") for breach of contract, fraud, and promissory estoppel, and hereby alleges as follows:

**NATURE OF ACTION**

1. This is an action arising from Defendant J.H. Whitney's failure to honor its agreed upon promise and contract to fairly compensate Ms. Chung for her commitment to stay working at the firm when J.H. Whitney was confronted with a period of turmoil and employee departures.

2. Ms. Chung is a highly regarded, experienced private equity professional. She began her employment at J.H. Whitney in 2013, which is a private equity firm that promotes itself as a leader and pioneer in the private equity industry that manages $1 billion in private capital.

3. An essential part of Ms. Chung's compensation was a grant of carried interest in a private equity fund sponsored by J.H. Whitney. Ms. Chung's share of the carried interest pool vested over time in accordance with a vesting schedule. In or around 2016, one of the co-heads of J.H. Whitney delivered to Ms. Chung a revised, accelerated vesting schedule in order to incentivize her to remain with the firm.

4. It was during this time that J.H. Whitney was faced with several challenges, including that the firm was reorganizing and changing its investment strategies, actively trying to raise capital for a new fund, and confronted with significant employee departures. In contrast, J.H. Whitney recognized Ms. Chung's value to the firm and wanted to incentivize Ms. Chung to remain at the firm. Ms. Chung's retention was important to J.H. Whitney because she was a lead member of the investment team for several key investments, including an investment that recently sold at an attractive valuation.

5. Ms. Chung relied on the revised vesting schedule and continued to work at J.H. Whitney for an additional two years until the time she left in March 2018. Even though Ms. Chung is entitled to compensation under the revised vesting schedule after her employment ended, J.H. Whitney recently in 2023 indicated that it would not honor its agreement, despite honoring the same agreement with another former employee, who is a white male, at an equivalent professional title with similar years of experience.

6. In this action, Ms. Chung seeks to recover the compensation owed to her and the resulting damages caused by J.H. Whitney's failure to honor its commitments.

## THE PARTIES

7. Plaintiff Ann K. Chung (nee Ann Kim) is a former employee of Defendant J.H. Whitney who was employed with the firm from June 2013 to March 2018 as a Vice President and Principal.[1] Ms. Chung is a resident of New York County, New York.

8. Defendant J.H. Whitney is a Delaware limited liability company with its headquarters in New Canaan, Connecticut.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to, *inter alia*, (i) N.Y. C.P.L.R. §§ 301 and 302 because J.H. Whitney does and transacts business within the state of New York, (ii) the Grant Agreement (defined below) is governed by the laws of the State of New York; and (iii) Plaintiff is a resident of New York County.

10. Venue is proper in this Court pursuant to CPLR § 503(a) because Plaintiff is a resident of New York County.

---

[1] Ms. Chung changed her surname from Kim to Chung in 2015.

2

**FACTUAL BACKGROUND**

**I.      Ms. Chung Was a Key Asset at J.H. Whitney.**

11.     J.H. Whitney is a privately owned, Connecticut-based firm that was established in 1946. It holds itself out to be one of the first U.S. private equity firms and a pioneer in the development of the private equity industry.

12.     J.H. Whitney promotes itself as a leader in the private equity industry, having invested in over 400 companies with currently $1 billion under management. J.H. Whitney provides private equity to small and middle market companies in a number of industries, including consumer, healthcare, specialty manufacturing, and business services.

13.     Ms. Chung, who is an experienced private equity investor, first began working at J.H. Whitney in June 2013 and was responsible for sourcing and reviewing new investment opportunities, as well as managing current investments.

14.     While working for J.H. Whitney, Ms. Chung resided in New York City and commuted to J.H. Whitney's office in Connecticut. Ms. Chung would occasionally work from home and conduct meetings in New York City as part of her role.

15.     Ms. Chung excelled at J.H. Whitney, and her responsibilities grew. Ms. Chung became the lead member of the investment team for several investments and one of the leads on all consumer investments. She was responsible for the development of investment theses, deal sourcing, relationship management, and executive network development. She also led all aspects of new investment deal execution, including conducting due diligence, financial analysis, and negotiations.

16.     Some of the investments led by Ms. Chung included: Alphia Inc. (previously CJ Foods), one of the largest manufacturers of pet foods and treats; Confluence Outdoor, an outdoor sporting goods and kayak company; Accupac, a full-service contract manufacturer and formulator

3

of personal care products; and Southern Aluminum, a manufacturer of tables and furniture for the hospitality, education, government, and convention industries.

17. These investments were significant to J.H. Whitney, and the firm recognized Ms. Chung's value and accomplishments as she was promoted to Principal in January 2015 and received additional compensation.

18. During her time at J.H. Whitney, Ms. Chung reported to Robert "Bob" Williams Jr., a Senior Managing Director, and Paul Vigano, a Senior Managing Director, who is one of the two current Principals of J.H. Whitney that lead the firm.

**II.     The Parties Entered into Compensation Agreements Because J.H. Whitney Wanted to Retain Ms. Chung.**

19. While employed at J.H. Whitney, Ms. Chung entered into several agreements related to her compensation.

20. Private equity firms often compensate employees in different ways, including a share of the firm's carried interest. Carried interest is a performance-based fee that the private equity firm receives from an investment fund that it sponsors. Awarding shares of the carried interest to employees of the private equity firm aligns their interests with those of the firm.

21. As such, a key component of Ms. Chung's compensation at J.H. Whitney was a grant of a 1.25% (out of 100%) share of J.H. Whitney's carried interest in the firm's seventh private equity fund ("Fund VII"). This compensation was memorialized in an agreement dated as of October 15, 2013 between J.H. Whitney and Ms. Chung (the "Grant Agreement"). The carried interest granted to Ms. Chung vested over time according to a vesting schedule set forth in the agreement.

22. Ms. Chung was later granted an additional 0.75% share (out of 100%) of the carried interest in Fund VII on August 14, 2014 ("Amendment to Grant Agreement").

4

23. In or around 2016, J.H. Whitney was in a period of fluctuation and turmoil. The firm was attempting to raise capital for an eighth fund ("Fund VIII"). However, the fundraising was proving to be difficult, and the expected closing of the fund was continually delayed. This was demoralizing for J.H. Whitney's employees, who worried about the firm's viability going forward if the fundraising effort failed and several senior investment professionals left the firm.

24. It was during this time period, in or around 2016, that Mr. Vigano, acting on behalf of J.H. Whitney, called Ms. Chung into his office. He handed her a document called "Ann W. Kim Revised Whitney VII Vesting Schedule." It referred to the two tranches of carried interest she had been awarded, as described above, and set forth a revised, accelerated vesting schedule for her carried interest awards (the "Revised Vesting Schedule"). *See* Exhibit A. Mr. Vigano told Ms. Chung that the Revised Vesting Schedule set forth the terms that J.H. Whitney would follow going forward. Ms. Chung conferred with a male colleague that had the same years of experience and title as Ms. Chung (the "Former Employee") who acknowledged that he, too, received a similar schedule for similar retention purposes which laid out an accelerated vesting schedule.

25. The accelerated vesting provided a powerful incentive for Ms. Chung to remain with J.H. Whitney for additional years. Under the original vesting schedule, only 0.8% out of her 1.75% share of the carry pool would vest by March 15, 2018—less than half. By contrast, 1.37% would vest by March 15, 2018 under the Revised Vesting Schedule, which represented an increase of 0.57% of her total 1.75% carried interest share—almost one-third of the total.

26. This Revised Vesting Schedule was intended to acknowledge Ms. Chung's contributions to J.H. Whitney and incentivize Ms. Chung to remain at the firm during the time when the firm was seeking to raise new capital and had simultaneously experienced employee departures. The Revised Vesting Schedule was provided to Ms. Chung with the intention that she

5

rely on it and stay employed at J.H. Whitney. Ms. Chung also conferred with the Former Employee at the time of receiving the revised schedule, who confirmed he had similar discussions with J.H. Whitney management and was given the same rationale for the accelerated vesting.

27. Retaining Ms. Chung was particularly important to J.H. Whitney because she was a lead member of the investment team for several investments, including the Alphia investment, which was recently sold at an attractive valuation.

28. Ultimately, J.H. Whitney was unable to raise the requisite capital for a new fund. In 2017, the firm changed its strategies. J.H. Whitney offered the current Fund VII investors the opportunity to sell their shares to a group of new investors. As part of that deal, the new investor group agreed to contribute an additional $200 million of new capital into "Fund VII-A."

29. Fund VII-A would be used to source new investments and represented a separate and distinct pool of carried interest for the firm and its employees. As Ms. Chung was a high performer for the firm, she was granted a separate interest in Fund VII-A.

30. While Ms. Chung was granted this additional compensation, a significant portion of her salary was still tied to the original Fund VII carried interest pool. Ms. Chung relied on the Revised Vesting Schedule and remained at J.H. Whitney for an additional two years after the agreement had been entered, during which time she continued to provide significant value to J.H. Whitney including by investing capital in new investments. During this time, the firm continued to experience further departures of tenured employees.

31. Ms. Chung resigned in late March 2018, after a significant portion of carried interest had vested under the Revised Schedule Agreement on March 15, 2018.

6

**III.     J.H. Whitney Refused to Pay Ms. Chung Under the Revised Vesting Schedule, Even Though It Paid Her Similarly Situated Colleague Under the Same Revised Schedule.**

32.     Even though Ms. Chung is no longer employed by J.H. Whitney, Ms. Chung is still entitled to receive distributions for her percentage share that had vested during her tenure at the firm.

33.     J.H. Whitney has never indicated to Ms. Chung that it would not honor the Revised Vesting Schedule until recently. Similarly, the Former Employee indicated that J.H. Whitney has never indicated to him that it would not honor his Revised Vesting Schedule. In fact, he departed J.H. Whitney in late 2016 and was initially provided a draft separation agreement that detailed his original carried interest vesting schedule. When the Former Employee pointed out the Revised Vesting Schedule he received around the same time as Ms. Chung earlier in 2016, J.H. Whitney acknowledged the Revised Vesting Schedule and altered his separation agreement to match said Revised Vesting Schedule with the detailed accelerated vesting. The Former Employee retained the redline against the original Separation Agreement draft which indicates the change to match the Revised Vesting Schedule.

34.     Between 2018 and 2023, Ms. Chung met with Mr. Vigano and Mr. Williams to discuss returning to J.H. Whitney to become a lead partner in raising a new pool of capital to invest. However, discussions concluded when Ms. Chung was not offered equal equity in the new fund and equal rights to the management company despite being requested to invest a new pool of capital at the same rate as Mr. Vigano and Mr. Williams. At no time was there discussion of Ms. Chung's previously granted carry in Fund VII or Fund VII-A.

35.     In or around August 24, 2023, it was announced that J.H. Whitney had sold its Alphia investment at an attractive evaluation, which was an investment that Ms. Chung had spearheaded.

36. In or around August 2023, Ms. Chung reached out to Mr. Williams to request that J.H. Whitney provide a rough estimate for her share of carried interest from the Alphia sale proceeds.

37. Over the course of September 2023 through November 2023, Ms. Chung continued to follow-up with Mr. Williams regarding how much she would receive. As part of those discussions, which continued for several weeks, Ms. Chung asked Mr. Williams why the expected payment varied from the Revised Vesting Schedule. Ms. Chung received a series of ever-changing explanations, and it was during this time that she first learned J.H. Whitney was refusing to honor the Revised Vesting Schedule.

38. At first, Mr. Williams claimed to have no knowledge of the Revised Vesting Schedule or any previous discussions related to Ms. Chung's equity. On September 21, 2023, Mr. Williams texted Ms. Chung "No idea where that paper came from"—referring to the Revised Vesting Schedule. Williams said he would discuss it with Mr. Vigano. Later, presumably after speaking with Mr. Vigano, he told Ms. Chung that the Revised Vesting Schedule had been distributed for "discussion purposes" only. That explanation is false—there was no "discussion" about the Revised Vesting Schedule. Then, in correspondence between counsel dated December 20, 2023, J.H. Whitney claimed that Mr. Williams had lunch with Ms. Chung in 2018 and remembered that Ms. Chung shared with him the Revised Vesting Schedule. In three months, Mr. Williams went from not recalling anything to a full (but still false) account of a lunch in 2018 acknowledging a review of previous equity agreements.

39. J.H. Whitney also claimed, through counsel, that the Revised Vesting Schedule was circulated merely as a contingency if Fund VII-A did not close. That, too, is false because Fund VII-A was not contemplated when Mr. Vigano gave Ms. Chung the Revised Vesting Schedule.

8

And that explanation would make no sense because Fund VII-A represented an entirely separate pool of carried interest from the pool underlying the Revised Vesting Schedule.

40. Additionally, the Former Employee never received carried interest in Fund VII-A as it was not contemplated at either the time of granting the Revised Vesting Schedule or at the time of his subsequent departure. No one at J.H. Whitney had any discussions with the Former Employee concerning Fund VII-A having any influence over his Revised Vesting Schedule.

41. J.H. Whitney has refused to honor the Revised Vesting Schedule for Ms. Chung, a minority woman, even though it has honored it for one or more similarly situated former employees who are white males.

42. There is no justification for J.H. Whitney's disparate treatment of Ms. Chung compared to the other former employee.

43. The shortfalls in payments owed by J.H. Whitney to Ms. Chung under the Revised Vesting schedule are at least $1 million as of the date of this Complaint.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
(Breach of Contract)

44. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45. The Revised Vesting Schedule, as an amendment or supplement to the Grant Agreement, is a valid and binding agreement in writing between Ms. Chung and J.H. Whitney that is complete in all its material terms.

46. Ms. Chung performed her obligations through her continued employment at J.H. Whitney for two years, during which time she provided valuable services to the firm.

9

47. J.H. Whitney is obligated to pay Ms. Chung as Fund VII's investments are harvested, in accordance with the Revised Vesting Schedule.

48. J.H. Whitney breached its contractual obligations to Ms. Chung by refusing to compensate her in accordance with the Revised Vesting Schedule and repudiated its obligations under the Revised Vesting Schedule.

49. As a result of J.H. Whitney's breaches, Ms. Chung has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000.

## **SECOND CAUSE OF ACTION**
(Fraud)

50. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. Mr. Vigano, on behalf of J.H. Whitney, represented to Ms. Chung that her carried interest in Fund VII would vest according to the Revised Vesting Schedule if she remained with the firm.

52. Mr. Vigano, on behalf of J.H. Whitney, made the representation intending that Ms. Chung would rely on it.

53. Mr. Vigano, on behalf of J.H. Whitney, knowingly made this statement to Ms. Chung, which was false and known to be false.

54. Ms. Chung acted in reasonable and justifiable reliance on Mr. Vigano's misrepresentations because, among other reasons, Mr. Vigano was the managing partner of the firm.

55. As a result of J.H. Whitney's misrepresentations and Ms. Chung's reliance thereon, Ms. Chung has suffered damages in an amount to be determined at trial.

56. As a result of J.H. Whitney's willful misconduct, Ms. Chung is entitled to punitive damages.

### THIRD CAUSE OF ACTION
(Promissory Estoppel)

57. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58. Ms. Chung justifiably relied on the representations by J.H. Whitney when it provided her with the Revised Vesting Schedule in 2016 and promised that the schedule provided for in the document would be her compensation. In so relying, Ms. Chung continued to work at J.H. Whitney for two more years.

59. But for Ms. Chung's substantial efforts over the next two years, J.H. Whitney would not have reaped the benefits of her continued employment, including, but not limited to, several investments into companies that Ms. Chung led for the benefit of J.H. Whtiney, several of which returned significant capital gains.

60. Ms. Chung has suffered an unconscionable injury, as the inequity to Ms. Chung is substantial as she continued to work at J.H. Whitney for two years after receiving the Revised Vesting Schedule and only now, several years later, J.H. Whitney has informed her it will not honor its promise.

61. As a result of J.H. Whitney's misrepresentations and Ms. Chung's reliance thereon, Ms. Chung has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000.

11

**WHEREFORE**, Plaintiff prays for relief as follows:

(1)  On all Counts, an award of all damages available at law, including, but not limited to, actual, compensatory, consequential and incidental damages, the precise amount of which will be determined at trial, but in no event less than $1,000,000;

(2)  On her Second Cause of Action, an award of punitive damages in an amount to be determined at trial;

(3)  An award of costs and attorney's fees; and

(4)  Such other and further relief as may be deemed by the Court to be just and proper.

## JURY DEMAND

Demand is hereby made for a jury trial on all issues.

Dated: New York, New York
       June 7, 2024

By:  /s/ *Joshua M. Slocum*

David H. Wollmuth
Joshua M. Slocum
Roselind F. Hallinan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
rhallinan@wmd-law.com

*Attorneys for Plaintiff*

# EXHIBIT A

## Ann W. Kim
## Revised Whitney VII Vesting Schedule

Tranche 1: 1.25%

|  | CURRENT | | REVISED | | CHANGE |
|---|---|---|---|---|---|
|  | Annual | Cumulative | Annual | Cumulative |  |
| July 15, 2014 | 0.13% | 0.13% | 0.13% | 0.13% | 0.00% |
| July 15, 2015 | 0.13% | 0.25% | 0.13% | 0.25% | 0.00% |
| July 15, 2016 | 0.13% | 0.38% | 0.25% | 0.50% | 0.13% |
| July 15, 2017 | 0.13% | 0.50% | 0.31% | 0.81% | 0.31% |
| July 15, 2018 | 0.44% | 0.94% | 0.31% | 1.13% | 0.19% |
| July 15, 2019 | 0.00% | 0.94% | 0.13% | 1.25% | 0.31% |
| July 15, 2020 | 0.00% | 0.94% | 0.00% | 1.25% | 0.31% |
| Never Vest | 0.31% |  | 0.00% |  |  |
|  | 1.25% |  | 1.25% |  |  |

Tranche 2: 0.75%

|  | CURRENT | | REVISED | | CHANGE |
|---|---|---|---|---|---|
|  | Annual | Cumulative | Annual | Cumulative |  |
| March 15, 2015 | 0.08% | 0.08% | 0.08% | 0.08% | 0.00% |
| March 15, 2016 | 0.08% | 0.15% | 0.19% | 0.26% | 0.11% |
| March 15, 2017 | 0.08% | 0.23% | 0.19% | 0.45% | 0.23% |
| March 15, 2018 | 0.08% | 0.30% | 0.11% | 0.56% | 0.26% |
| March 15, 2019 | 0.26% | 0.56% | 0.11% | 0.68% | 0.11% |
| March 15, 2020 | 0.00% | 0.56% | 0.08% | 0.75% | 0.19% |
| Never Vest | 0.19% |  | 0.00% |  | 0.00% |
|  | 0.75% |  | 0.75% |  | 0.00% |