UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANN K. CHUNG,

                              Plaintiff,

          -v-

J.H. WHITNEY CAPITAL PARTNERS, LLC,

                              Defendant.

24 Civ. 5864 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Ann K. Chung here sues her former employer, J.H. Whitney Capital Partners, LLC ("J.H. Whitney"), to recover payments that she claims were owed based on a modification of her employment agreement. She brings claims for breach of contract, promissory estoppel, and fraud. J.H. Whitney moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion in full.

I.    **Background**[1]

    A.    **Factual Allegations**

Chung is a private equity investor who, in June 2013, began working as an at-will employee for J.H. Whitney, a Connecticut-based private equity firm. AC ¶¶ 13, 15. By January 2015, Chung had been promoted to "principal," and in that role "was responsible for the development of investment theses, deal sourcing, relationship management, and executive network development." *Id.* ¶¶ 17, 19. She also "led all aspects of new investment deal execution, including conducting due diligence, financial analysis, and negotiations." *Id.* ¶ 17.

---

[1] The following facts, assumed true for purposes of resolving the motion, *see Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024), are drawn from Chung's Amended Complaint, Dkt. 13 ("AC").

1

As principal, Chung reported to two senior managing directors, Robert "Bob" Williams Jr., and Paul Vigano. *Id.* ¶ 20.

Chung alleges that she entered into several compensation-related agreements during her employment with the firm. *Id.* ¶ 21. A key component of her compensation under each consisted of "carried interest," a "performance-based fee that the private equity firm receives from an investment fund that it sponsors." *Id.* ¶ 22.

Under an October 15, 2013 written agreement (the "Grant Agreement") between Chung and J.H. Whitney, Chung was entitled to a 1.25% share of the firm's carried interest in "Fund VII," a private equity fund managed by the company. *Id.* ¶ 23. The carried interest granted to Chung vested over time based on a vesting schedule set forth in the agreement. *See id.* The Grant Agreement contains a no-oral-modification clause that requires all subsequent amendments to be in a mutually approved writing. *See* Dkt. 17-2 ("Grant Agreement"); Dkt. 32 ("Transcript" or "Tr.") at 5.

On August 14, 2014, Chung was granted an additional 0.75% share of the carried interest in Fund VII, pursuant to a written amendment to her employment contract. *Id.* ¶ 24.

The AC alleges, finally, that in or around 2016, J.H. Whitney endured "a period of fluctuation and turmoil" in which it struggled to raise capital for an eighth private equity fund, "Fund VIII," resulting in the departure of several senior-level investors. *Id.* ¶ 25. During that time, the AC alleges, Vigano met with Chung in his personal office. *Id.* ¶ 26. He provided her a document titled "Ann W. Kim Revised Whitney VII Vesting Schedule" ("Revised Vesting Schedule").[2] *Id.* It identifies two tranches of carried interest, each divided into two columns. *Id.*

---

[2] "Kim" is the plaintiff's maiden name; in 2015, she changed her surname to "Chung." *See id.* at 2 n.1.

2

One is titled "current" and is consistent with the allocations in the Grant Agreement and 2014 Amendment. *Id.* The other column, alongside it, is titled "revised," and sets out a new accelerated vesting schedule. *Id.* The revised column purports to show that Chung would be compensated under the amended schedule if she continued to work for the company for specified lengths of time. *Id.* ¶ 27. Under the original vesting schedule, for example, 0.13% of carried interest of Fund VII would vest on July 15, 2016; by contrast, under the Revised Vesting Schedule, nearly double that figure—0.25%—would vest by that date. *Id.* ¶ 31. Vigano "told Ms. Chung that the Revised Vesting Schedule set forth the terms that J.H. Whitney would follow going forward." *Id.* ¶ 26.

The AC's central allegation is that the Revised Vesting Schedule is a written promise—by J.H. Whitney to Ms. Chung—and enforceable either in contract or quasi-contract, such that "she would be compensated under the amended schedule if she remained in her employment past specified milestones." *Id.* ¶ 27. The AC alleges that the "accelerated vesting [schedule] provided a powerful incentive for Chung to remain with J.H. Whitney," even though she was "considering other job opportunities." *Id.* ¶¶ 31, 38. It alleges that retaining Chung was "particularly important" to J.H. Whitney because she was a lead member of the investment team. *Id.* ¶ 34. Finally, it alleges that Chung, relying on the Revised Vesting Schedule, remained at the firm an additional two years after the agreement had been entered. *See id.* ¶ 38.

In March 2018, Chung left the firm. *Id.* ¶ 5. Afterwards, the AC alleges, Chung received several distribution payments from J.H. Whitney and had "no reason to believe that J.H. Whitney was not adhering to the Revised Vesting Schedule." *Id.* ¶ 46. In late 2023, however, after the sale of an investment Chung had helped facilitate while employed at J.H. Whitney, Chung realized that "the total amount J.H. Whitney had provided was too low under the Revised

3

Vesting Schedule." *Id.* ¶ 45. She reached out to J.H. Whitney's senior management for an explanation, and learned for the first time that J.H. Whitney was "refusing to honor the Revised Vesting Schedule." *Id.* ¶ 48. The AC alleges that a similarly situated white male employee had entered into the same revised vesting schedule agreement with J.H. Whitney, which the firm honored.[3] *Id.* ¶¶ 41, 52. The payments allegedly owed to Chung under the Revised Vesting Schedule amount to at least $1 million as of the date of the AC's filing. *Id.* ¶ 54.

### B. Procedural History

On June 10, 2024, Chung filed this lawsuit in New York state supreme court. Dkt. 4. On August 2, 2024, J.H. Whitney removed the case to federal court based on diversity jurisdiction, 28 U.S.C. § 1332(a)(1). *Id.*

On August 29, 2024, J.H. Whitney moved to dismiss. Dkt. 11. That day, the Court issued an order directing Chung to either amend the Complaint or oppose the motion, stating that no further opportunities to amend would ordinarily be given. Dkt. 12. On September 19, 2024, Chung filed the operative AC, bringing claims for (1) breach of contract, (2) promissory estoppel, (3) fraud, and (4) a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Dkt. 13. On October 10, 2024, J.H. Whitney renewed its motion to dismiss. Dkt. 17. On November 7, 2024, Chung opposed. Dkt. 23 ("Pl. Mem."). On November 21, 2024, J.H. Whitney replied. Dkt. 26.

On December 18, 2024, the Court held argument. Dkt. 30. At argument, the Court invited Chung's counsel to file a supplemental letter on a discrete issue raised by counsel for J.H.

---

[3] J.H. Whitney distinguishes the male colleague's case on the ground that he, unlike Chung, "insisted on including language in his written separation agreement memorializing the detailed accelerated vesting," and that he "retained the redline that indicates the change." Dkt. 17 ("D. Mem.") at 6 (cleaned up).

4

Whitney during argument.[4] *Id.* On December 23, 2024, Chung's counsel filed that letter. Dkt. 31.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir.

---

[4] Neither party's brief addressed the Grant Agreement's clause barring later oral agreements. At argument, J.H. Whitney cited *Randolph Equities, LLC v. Carbon Cap., Inc.*, 648 F. Supp. 2d 507 (S.D.N.Y. 2009), in support of its argument that the clause foreclosed Chung's promissory estoppel claim, prompting the Court to invite Chung to submit the supplemental letter. *See* Tr. at 5–7, 70–73.

5

2021) (citation omitted). Applying these principles, the Court here considers Chung's employment contract, *see* Grant Agreement, and the Revised Vesting Schedule, annexed to the Amended Complaint as Exhibit A. Dkt. 13-1.

### III. Discussion

J.H. Whitney moves to dismiss each claim. Under the Grant Agreement, the claims are governed by New York law, a point on which the parties agree. *See* AC ¶ 9; D. Mem. at 9 n.3. The Court considers each claim in turn.[5]

#### A. Breach of Contract

The breach-of-contract claim is based on the theory that the Revised Vesting Schedule modified Chung's employment contract, and that J.H. Whitney breached an agreement, pursuant to that modification, to pay her an increased share of carried interest in Fund VII. In moving to dismiss, J.H. Whitney argues that, to be effective, the alleged modification was required to have been in a signed writing.

Under New York law, to state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) performance by plaintiff; (3) a breach by the defendant; and (4) damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citation omitted). It is well-settled that for a contract to be valid, "the agreement between the parties must be

---

[5] Defendants, at the threshold, make an argument common to all claims: that they are barred by the statute of limitations. That is unpersuasive. Chung filed this lawsuit on June 10, 2024. Dkt. 4-1. The limitations period for breach-of-contract and promissory estoppel runs for six years upon the breach of contract or promise. *See* N.Y. C.P.L.R. § 213(2). And the AC alleges that Whitney began underpaying Chung's distributions in or around November 2020, AC ¶ 43, and repudiated the Revised Vesting Schedule in 2023, *id.* ¶ 41, well within the six-year period. The limitations period for fraud here accrues "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). The AC alleges that Chung did not learn of the alleged fraud until late 2023. AC ¶ 48. Accordingly, that claim is also timely.

definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018). A complaint "fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (citation omitted). "Conclusory allegations that a contract existed or that it was breached do not suffice." *Id.* (citation omitted).

### 1. Section 5-701(a)(1) of the New York Statute of Frauds

J.H. Whitney contends that Section 5-701(a)(1) of the Statute of Frauds forecloses the breach-of-contract claim. Def. Mem. at 9. That section requires agreements that are incapable of performance within a year to be signed and in writing. *See* N.Y. Gen. Oblig. Law § 5–701(a)(1) ("Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged," if "such agreement, promise or undertaking" according to "its terms is not to be performed within one year from the making thereof[.]"); *Hallett v. Stuart Dean Co.*, 517 F. Supp. 3d 260, 285 (S.D.N.Y. 2021) (alleged agreement must be "incapable of full performance within a year" (citation omitted)). However "unlikely" it may be that the agreement would have been fully performed within a year, "the Statute of Frauds does not turn on probabilities"; it applies to "only those agreements which 'have *absolutely no* possibility in fact and law of full performance within one year.'" *Id.* (emphasis added) (quoting *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 366 (1998)); *see also Kroshnyi v. U.S. Pack Courier Serv., Inc.*, 771 F.3d 93, 110–11 (2d Cir. 2014).

7

The Court is not persuaded by J.H. Whitney that the Revised Vesting Agreement was incapable of full performance within one year. Chung was an at-will employee. She could have been terminated or resigned at any time. Or she could have, within one year of the agreement, left J.H. Whitney. In any of these circumstances, she would have been entitled to collect on the share of interest fixed and earned during that period.[6] *See Kroshnyi*, 771 F.3d at 110 (Statute of Frauds does not bar a contract which "could theoretically be terminated by either party within one year of their making"); *Hallett*, 517 F. Supp. 3d at 285 (same); *Komlossy v. Faruqi & Faruqi, LLP*, No. 15 Civ. 9316, 2017 WL 722033, at *4 (S.D.N.Y. Feb. 23, 2017) ("[T]he oral agreement need only be *capable* of performance within a year, however unexpected, unlikely, or even improbable such performance may be." (emphasis in original) (citation omitted)).

J.H. Whitney makes two points in response. First, it argues that the Revised Vesting Schedule, by its terms, set forth a payment plan that carried into 2020, such that Chung "needed

---

[6] At argument, counsel for J.H. Whitney conceded this factual point:

> The Court: And therefore, if Ms. [Chung] left after the cumulative vested amount became .38 percent, even if she were in retirement in the Caribbean, she would still be entitled to that .38 percent year in, year out, for any year thereafter in which the fund had a carried interest earned.
>
> Mr. Del Pozo: Yes. Your Honor has characterized it correctly. That's the way it works.
>
> The Court: So, it's on annualized payout, and the condition under the existing agreement for her to earn each step up—so, for example, to go to a cumulative .50 as opposed to .38 on July 15, 2017—simply is that she remain employed by Whitney, right?
>
> Mr. Del Pozo: That's right. During her term of employment, she would get her entire amount of carried interest as an employee, and then after her termination she would get the percentage that had vested up to that point.

Tr. at 13.

8

to remain with J.H. Whitney for four more years to perform this agreement fully." D. Mem. at 10. But that point reflects a factual discrepancy that, on a motion to dismiss, must be resolved in Chung's favor. As the AC alleges, the modification, which is said to have taken effect "in or around 2016," *see id.* ¶ 26, consists of date-keyed "milestones," some of which are within a year of the execution of the alleged modification. *Id.* ¶¶ 27, 31. Had Chung remain employed by J.H. Whitney by a given date, her share of carried interest would then become fixed and earned. *See id.* ¶ 31. Thus, "even if Ms. Chung chose to leave J.H. Whitney in late 2016 or early 2017," she "would still be owed an increased percentage under the Revised Vesting Schedule." *Id.* The Court must credit those well-pled allegations. *See Apotex*, 823 F.3d at 59 ("On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor.").

J.H. Whitney next counters that the agreement could not have been fully performed within one year because Chung's alleged increased share of carried interest would "depend on yet-unrealized future sales of the portfolio's investments[.]" D. Mem. at 11. But the New York Court of Appeals has spoken clearly to this point. It has held that "the presence of bonus or salary terms payable after one year does not bring a long-term indefinite employment contract within the Statute of Frauds." *Cron*, 91 N.Y.2d at 367 (cleaned up); *see also Guilbert v. Gardner*, 480 F.3d 140, 151–52 (2d Cir. 2007) (applying *Cron* and holding that plaintiff's claim was not barred by the Statute of Frauds because the "measure of defendants' alleged obligation to contribute annually to plaintiff's pension fund is fixed within a year" (cleaned up)).

In *Cron*, the agreement at issue required the defendant to pay plaintiff a bonus commensurate with a share of defendant's annual pre-tax profits, which could not be determined until two months into the next calendar year. *See* 91 N.Y.2d at 364. The defendant argued that

9

the Statute of Frauds made the alleged oral agreement unenforceable because the plaintiff's claims for compensation could not be calculated within a year. *See id.* However, the Court of Appeals held that the Statute of Frauds did not bar enforcement of the agreement because "the employment relationship is terminable within a year" such that the alleged bonus is "fixed within that period," although "possibly affected by mere calculations thereafter." *See id.* at 370.

The same is so here. Even if Chung's share of carried interest depended on sales that occurred over a year after execution of the agreement, such is a "mere calculation[]" that does not otherwise bring the agreement within § 5-701(a)(1) of the Statute of Frauds. *Id.* The Court thus rejects J.H.'s argument to the contrary.

### 2. Section 15-301 of the New York Statute of Frauds

The alleged agreement, however, is subject to another provision of the New York Statute of Frauds. Section 15-301 provides that "[a] written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." Where "the original contract between the parties contains a no-oral-modification clause, § 15-301 applies." *Baraliu v. Vinya Cap., L.P.*, 765 F. Supp. 2d 289, 297 (S.D.N.Y. 2011) (cleaned up); *see also Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*, No. 19 Civ. 503, 2020 WL 917058, at *5 (S.D.N.Y. Feb. 26, 2020) (presence of no-oral-modification clause triggers application of § 15-301); *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 425 (2013) (same).

There are two "narrow" exceptions to this rule: where (1) the aggrieved party has partially performed pursuant to the oral agreement's terms; and (2) the other party has "induced [the aggrieved party's] significant and substantial reliance upon an oral modification" such that it

10

is "estopped from invoking the statute to bar proof of that oral modification." *Trident Brands*, 2020 WL 917058, at *5 (citing *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 341 (1977) and *United States v. Schwimmer*, 968 F.2d 1570, 1575 (2d Cir. 1992)).

Here, the Grant Agreement contained a no-oral-modification clause, *see* Dkt. 17-2. That triggered the requirement of § 15-301 that any subsequent modification must be both signed and in writing. *See Trident Brands Inc.*, 2020 WL 917058, at *5 (so finding); *Israel v. Chabra*, 12 N.Y.3d 158, 163 (2009) (same). The Revised Vesting Schedule is undisputedly not signed. That alone makes it unenforceable under § 15-301. *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 (2d Cir. 1998) ("As the statute makes clear, any writing must be signed by the party to be charged or his agent."); *Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 403 (S.D.N.Y. 2023) (dismissing for failure to satisfy statute's signature requirement and collecting similar cases); *Susman v. Commerzbank Cap. Markets Corp.*, 945 N.Y.S.2d 5, 7 (2012) (same); *A&S Reps, LLC v. N. Am. Enclosures, Inc.*, N.Y.S.2d 559, 559 (N.Y. Sup. Ct. 2005) (same).

Independently, the Revised Vesting Schedule is unenforceable because it does not qualify as an enforceable "writing" within the meaning of the statute. For a contract (or modification thereof) to be valid, "the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Foros Advisors*, 333 F. Supp. 3d at 360 (citation omitted). Here, what defendants fairly term a one-page "assemblage of numbers," D. Mem. at 12, lacks key hallmarks of an enforceable contract—such as the date upon which it becomes effective, what constitutes offer and acceptance, what consideration was exchanged, or whether mutuality of agreement was reached. *See Baraliu*, 765 F. Supp. 2d at 298 ("To be enforceable, an oral modification must possess all of the elements necessary to form a

11

contract[.]" (citation omitted)). It is instead merely a list of numbers and dates. Where the terms of an alleged agreement are so "vague" and "indefinite" that "no basis or standard for deciding whether the agreement had been kept or broken, . . . and no means by which such terms may be made certain, then there is no enforceable contract." *Foros Advisors*, 333 F. Supp. 3d at 360 (citation omitted); *see also, e.g.*, *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 451 (S.D.N.Y. 2021) (contract unenforceable where it is "bereft" of material terms such as "who agreed to it, what form such agreement took, when it was agreed to (aside from the conclusion that it was 'dated' October 25, 2020), and whether any consideration was exchanged for the extension"); *Baraliu*, 765 F. Supp. 2d at 298 (contract unenforceable insofar as "[a]n agreement to do something which the promisor is already required to do by an existing contract is unsupported by consideration"); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 184 (S.D.N.Y. 2009) (dismissing claim where plaintiffs failed to plead "any facts related to the formation of this contract, when it occurred, its terms and conditions, its consideration, or what constituted an offer and acceptance of the contract"); *Drummond v. Akselrad*, No. 23 Civ. 179, 2023 WL 3173780, at *6 (S.D.N.Y. May 1, 2023) (no enforceable contract where the complaint does not allege "a meeting of the minds on all essential terms" (citation omitted)).

The AC seeks to cure this problem by relying on oral representations allegedly made by Vigano, *see* AC ¶¶ 26–28. But such reliance, given the Grant Agreement's no-oral-modification clause, was inherently ineffective. *See, e.g.*, *Baraliu*, 765 F. Supp. 2d at 297–98 (no-oral-modification clause rendered reliance on oral promise unreasonable); *Randolph Equities*, 648 F. Supp. 2d at 519 (same); *Wilson v. Dantas*, 103 N.Y.S.3d 381, 382 (1st Dep't 2019) (similar).

Chung also cannot avail herself of the partial performance or equitable estoppel exceptions to the general rule of § 15-301. "For either exception to apply, . . . [plaintiff's] conduct 'must not otherwise be compatible with the agreement as written.'" *Trident Brands*, 2020 WL 917058, at *5 (quoting *Rose*, 42 N.Y.2d at 344). The New York Court of Appeals has held that "this standard means that the action taken must be . . . 'explainable only with reference to the oral agreement.'" *Argenti*, 155 F.3d at 122 (quoting *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664 (1983)). Such is not the case here. Although the AC claims that Chung remained at the firm for two additional years in reliance upon J.H. Whitney's alleged promises, her conduct is also "reasonably explained" by the terms of the original Grant Agreement, whose vesting scheduled also keyed heightened payouts to the length of Chung's tenure. *Id.*; *see also Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) (the "limited exceptions to the requirement of a written modification" do not apply where plaintiff's performance "would be equally consistent with his desire to continue to earn his compensation under the written Employment Agreement"); *see also Randolph Equities*, 648 F. Supp. 2d at 519 (S.D.N.Y. 2009) (neither exception applied where plaintiff had a preexisting obligation to perform the conduct in question); *Trident Brands*, 2020 WL 917058, at *5 (same); *Baraliu*, 765 F. Supp. 2d at 298 (same). Because Chung's performance is consistent with the terms of the original employment agreement, neither exception applies.

For these reasons, the Court dismisses the AC's breach-of-contract claim, pursuant to § 15-301.

### B. Promissory Estoppel

In its promissory estoppel claim, the AC seeks enforcement of J.H. Whitney's alleged promise to compensate Chung according to the revised vesting schedule. Under New York law,

13

to plead a claim of promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *See Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

However, where "an agreement between the parties contains an unambiguous no-oral-modification clause," it is blackletter law that "a party could not have reasonably relied on the alleged oral promises that comprised its promissory estoppel claim." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 343 (S.D.N.Y. 2023); *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 7 Civ. 432, 2008 WL 650403, at *11 (S.D.N.Y. Mar. 7, 2008) ("If terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have *reasonably* relied on those statements as a matter of law." (emphasis in original)); *Randolph Equities*, 648 F. Supp. 2d at 524; *Elliot v. Nelson*, 301 F. Supp. 2d 284, 288 (S.D.N.Y. 2004) (same); *Holahan v. 488 Performance Grp., Inc.*, 33 N.Y.S.3d 214, 216 (2016) (because employment agreement "unambiguously provided that any extension of the agreement needed to be in writing," without "a signed employment agreement, [plaintiff] could not have reasonably relied upon defendants' alleged oral representations regarding the terms of her employment").

In light of the Grant Agreement's no-oral-modification clause, that principle bars Chung from recovering under promissory estoppel, because it made her reliance on J.H. Whitney's oral representations inherently unreasonable.[7] And to the extent Chung argues that the Revised

---

[7] A limited exception exists where "unconscionable injury" resulted from reliance on the alleged promise. *Castellotti v. Free*, 27 N.Y.S.3d 507, 514 (1st Dep't 2016). But the AC, which alleges only in general terms that Chung "consider[ed]" but forewent "other job opportunities," AC ¶ 38, falls well short of pleading this. Indeed, as courts have repeatedly held, unconscionable injury "requires more than just a showing of economic harm." *Wolet Cap. Corp. v. Walmart Inc.*, No. 18 Civ. 12380, 2021 WL 242297, at *13 (S.D.N.Y. Jan. 25, 2021) (collecting cases); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008)

Vesting Schedule constitutes a written agreement that satisfied the no-oral-modification clause, that argument fails for the reasons reviewed above, relating to N.Y. Gen. Oblig. Law § 15-301. The Court therefore dismisses the promissory estoppel claim.

### C. Fraud

The AC also claims fraud. Under New York law, "a cause of action for fraud require[s] a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). And under Federal Rule of Civil Procedure 9(b), fraud claims require a particularized pleading exceeding Rule 8(a)(2)'s ordinary requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 9(b), a complaint alleging fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). The Second Circuit further "require[s] plaintiffs to allege facts that give rise to a strong inference of fraudulent intent," an inference that may be inferred from particularized facts (1) showing motive and opportunity to commit fraud or (2) constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Here, the AC offers two theories of fraud. First, it alleges that Vigano, on behalf of J.H. Whitney, knowingly made the false representation that the Revised Vesting Schedule would take

---

("[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation." (citation omitted)).

15

effect to induce Chung to remain at the company. AC ¶¶ 63–65. Second, it alleges that Vigano fraudulently represented that he had authority to make this statement, while, in fact, he did not. AC ¶ 66.

Each theory is inadequately pled, however, because, under New York law, reasonable reliance is an essential element of a fraud claim. *See Trident Brands*, 2020 WL 917058, at *6; *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*, 829 F.3d 173, 177 (2d Cir. 2016) (plaintiff asserting fraud claim must plead justifiable reliance). Here, for the reasons reviewed above, insofar as the Grant Agreement unambiguously prohibited any oral modifications, Chung cannot plausibly claim to have reasonably relied on Vigano's representations. *See, e.g., Trident Brands*, 2020 WL 917058, at *6 ("[G]iven the License Agreement's unambiguous prohibition on oral modifications, reliance on any purported oral assurances was unreasonable."); *Vill. On Canon v. Bankers Tr. Co.*, 920 F. Supp. 520, 530–31 (S.D.N.Y. 1996) (same); *Holahan*, 33 N.Y.S.3d at 215 (same); *Bank Leumi Tr. Co. v. D'Evori Int'l, Inc.*, 558 N.Y.S.2d 909, 915 (N.Y. App. Div. 1990) ("[R]eliance is an essential element of [a fraud] claim or defense, and given the unambiguous terms of the loan agreement . . . any such reliance would not be justified.").

The Court accordingly dismisses the fraud claim.

### D.     Declaratory Judgment

Finally, Chung seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that, "under the terms of the Grant Agreement, as amended or supplemented by the Revised Vesting Schedule, she is entitled to compensation from J.H. Whitney at the rates set forth in the Revised Vesting Schedule." AC ¶ 80. The Declaratory Judgment Act permits a district court to exercise jurisdiction over a proposed declaratory judgment action only when an actual controversy exists. *See* 28 U.S.C. § 2201(a). But here, the Court has dismissed all of

Chung's claims for substantive relief, based on breach-of-contract, promissory estoppel, and fraud. No actual controversy remains, and Chung therefore lacks a basis on which to pursue a declaratory judgment. *See, e.g.*, *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 123 (S.D.N.Y. 2019) ("[W]hen an actual controversy ceases to exist, there can be no claim under the Declaratory Judgment Act, and the court loses subject matter jurisdiction."); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) ("If a claim has become moot prior to the entry of final judgment, the district court generally should dismiss the claim for lack of jurisdiction."). The Court therefore dismisses the AC's declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, the Court grants J.H. Whitney's motion to dismiss. The dismissal is with prejudice, as Chung was given and took the opportunity to amend her original Complaint while being warned that further opportunities would not ordinarily be granted. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (affirming dismissal with prejudice where plaintiff had an opportunity to amend, rendering further amendment "futile"); *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 319 F. Supp. 3d 747, 751 (S.D.N.Y. 2018) (collecting cases). The Clerk of Court is respectfully directed to terminate the motion pending at Docket 17 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 23, 2025
       New York, New York